IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID JAMES WASSELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | CIVIL ACTION NO. 3:07-326 |
| ALBERT YOUNKIN and SCOTT ) | |
| BLOCKER, Pennsylvania State ) | |
| Constables; EDWARD MCSHEFFERY, ) | |
| Municipal Police Captain; VINCENT ) | JUDGE KIM R. GIBSON |
| TRAYNOR and RONALD HAGGERTY, ) | |
| JR., Municipal Police Sergeants; JOHN ) | |
| GALLAHER and DAN WISSLER, ) | |
| Municipal Police Corporals, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

### SUMMARY

The above-captioned matter is before the Court on Plaintiff's appeal of United States Magistrate Judge Francis X. Caiazza's denial of his motion for appointment of counsel. For the reasons given below the Court will affirm.

**History**[1]

Plaintiff claims that on the morning of July 18, 2006, Defendants "converged" on his home to serve him with traffic warrants. Document No. 3 p. 5 ¶ 11. He hid in a clothes closet. *Id.* Defendants Younkin and Wissler found him there, and Younkin "verbally ordered" Plaintiff to come out. *Id.* at ¶ 12. Plaintiff attempted to "pull himself out of the closet by the frame," but was struck in the hand by a "nightstick/baton." *Id.* at ¶ 13. Younkin then struck Plaintiff "multiple times" while Wissler grabbed

---

[1] Since Defendants have not yet filed their answer, and since Plaintiff has not furnished any evidence in support of his allegations, the following account is based solely on Plaintiff's complaint and motion.

1

Plaintiff's ponytail and sprayed "Pepper Spray" in his face. *Id.* at ¶ 14.

Plaintiff was then "dragged across the floor" while Younkin, Wissler and evidently "other defendants" punched and kicked Plaintiff "about his face head and back." *Id.* at 5-6 ¶¶ 15-16. During this time, Plaintiff alleges that Defendant Haggerty said, "Beat the F— Out of Him." *Id.* at 6 ¶ 17. Plaintiff claims that ultimately all defendants except McSheffery "brutaliz[ed] plaintiff as he lay prone on the floor, kicking him, punching and deploying pepper spray into [his] face." *Id.* at ¶ 18. This scene was witnessed by Plaintiff's three minor children, his pregnant girlfriend, and her elderly parents. *Id.* at ¶¶ 21-23.

Plaintiff was then taken to the "District Magistrate Office of Ronald Haggerty Senior." *Id.* at ¶ 24 (emphasis in original). He claims that he "was left sitting [at the office] with, multiple laceration [sic] to the head knee and hand and visibly bloodied with difficulty in breathing." *Id.* Plaintiff's repeated requests for medical attention were denied, and when Plaintiff was delivered to the Fayette County Prison, and Defendants Younkin and Blocker were asked if Plaintiff had received medical care, Younkin answered, "No. He's fine." *Id.* at 6-7 ¶¶ 24-26.

Plaintiff is presently incarcerated at the State Correctional Institute at Cresson, Pennsylvania, serving a sentence of "40 to 80 months." *Id.* at 1. On December 14, 2007, United States Magistrate Judge Francis X. Caiazza granted Plaintiff *in forma pauperis* status and Plaintiff, acting *pro se*, commenced the above-captioned action. Document No. 2; Document No. 3. Plaintiff asserts, *inter alia*, causes of action under 42 U.S.C. § 1983 for Defendants' use of excessive force during his arrest and their refusal to provide him with medical care, as well as "the tort of assault and battery under the Law of Pennsylvania." Document No. 3 pp. 5-7.

Plaintiff has also filed a motion for appointment of counsel, claiming that he "is unable to afford

2

counsel"; "[t]he issue's [sic] involved in this case are complex"; Plaintiff "is a prison inmate, with limited access to Law Library";"[t]he testimony will be in sharp conflict" since Defendants' police reports state that Plaintiff assaulted Defendants; expert testimony will be required regarding both medical issues and the "Training and Use of chemical pepper spray"; and Plaintiff "has only a grade school education and has no legal education." Document No. 4. Magistrate Judge Caiazza denied Plaintiff's motion, Document No. 6, and Plaintiff timely appealed. Document No. 7.

## JURISDICTION

This Court has original jurisdiction over Plaintiff's civil rights claims under 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over his related state law claims under 28 U.S.C. § 1367(a). This matter was properly before Magistrate Judge Caiazza pursuant to 28 U.S.C. § 636(b)(1)(A), and this Court has appellate jurisdiction over his decision. *Id.*; Fed. R. Civ. P. 72(a).

## STANDARD OF REVIEW

A district court's denial of counsel to an indigent civil litigant is reviewed for abuse of discretion. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002)(citing *Hamilton v. Leavy*, 117 F.3d 742 (3d Cir. 1997)). Abuse of discretion occurs if the court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (citations omitted). This definition comports with the "clearly erroneous or contrary to law" standard of review applied by the district courts to nondispositive decisions by a magistrate judge. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Since Plaintiff's case can continue without the aid of counsel, the magistrate judge's decision was clearly nondispositive.

## DISCUSSION

An indigent civil litigant "possess[es] neither a constitutional nor a statutory right to appointed

3

counsel." *Montgomery*, 294 F.3d at 498. However, 28 U.S.C. 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel." Although the plain language of the statute affords the court broad discretion, there are "significant practical restraints" on its application, including the "ever-growing number of prisoner civil rights actions"; "lack of funding"; and the limited number of qualified attorneys who are willing to undertake such work *pro bono*. *Tabron v. Grace*, 6 F.3d 147, 153-55, 157 (3d Cir. 1993)(citations omitted).[2] As a result, "volunteer lawyer time is extremely valuable," and not to be wasted. *Id.* at 157 (citation omitted).[3]

*Tabron* provided a non-exhaustive list of factors to be considered by a court contemplating assignment of counsel. *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)(citing *Tabron*, 6 F.3d at 157). The threshold determination is whether a plaintiff's claims have "some arguable merit in fact and law." *Tabron*, 6 F.3d at 155. "[M]ere bald assertions by an indigent" are insufficient to warrant appointment of counsel. *Montgomery*, 294 F.3d at 499 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986)). Instead, the Third Circuit requires some factual showing by the movant to indicate more than an "'extremely slim' chance of success on the merits." *Id.* at 501 (quoting *Hodge*, 802 F.2d at 60); *see also id.* at 499-501 (finding that Montgomery's undisputed diagnoses of "heart and HIV conditions," and defendants' own records indicating that they had not performed a cardiac catheterization ten months after it had been ordered "established a prima facie case" of defendants' "deliberate indifference to [Montgomery's] serious medical needs"); *Parham*, 126 F.3d at 458 & n.7 (finding that a prison doctor's prescription of Cortisporin ear drops for tinnitus when it is not indicated

---

[2] *Tabron* refers to an earlier version of § 1915, in which the assignment of counsel provision of the present § 1915(e) was codified as § 1915(d). *Tabron*, 6 F.3d at 153-54.

[3] The Court notes that the practical restraints enumerated in *Tabron* have, if anything, grown more severe in the fifteen years since it was decided, thus rendering *pro bono* time even more precious than it was in 1993.

4

for that condition; his prescription of Cortisporin for 114 days when it should not be used for more than ten; and his refusal to refer Parham to a specialist until after Parham had suffered severe hearing loss presented a meritorious case of "Eighth Amendment deliberate indifference"); *Hamilton v. Leavy*, 117 F.3d 742, 744, 749 (3d Cir. 1997)(finding that the district court erred in holding that Hamilton had not made out a colorable Eighth Amendment claim that "defendants knew of and disregarded an excessive risk to his safety" where "the fact that Hamilton's safety [in prison had] been an ongoing concern [was] not in dispute").

In the case *sub judice*, the magistrate judge made no findings regarding the merits of Plaintiff's case. *See* Document No. 6. Since the magistrate judge did grant Plaintiff's motion for *in forma pauperis* status, Document No. 2, the Court can conclude that he found the action to be neither frivolous nor malicious, and that it did not fail to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). However, as discussed above, more is required before the Court may appoint counsel.

Plaintiff has not supplied more. Instead, at this stage of the proceedings the Court is faced with nothing but "bald assertions by an indigent." Without any evidence and, indeed, without so much as Defendants' answer to the complaint, it is impossible to judge whether Plaintiff has an extremely slim or, in fact, any chance of prevailing, and it would therefore be an abuse of discretion for the Court to request an attorney to represent Plaintiff at this time.

**Remaining *Tabron* factors**

Although the Court need not reach the remaining *Tabron* factors, their conclusory application in the magistrate judge's denial of Plaintiff's motion suggests that some discussion is warranted. The factors are:

5

1. the plaintiff's ability to present his or her own case;
2. the difficulty of the particular legal issues;
3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;
4. the plaintiff's capacity to retain counsel on his or her own behalf;
5. the extent to which a case is likely to turn on credibility determinations, and;
6. whether the case will require testimony from expert witnesses.

*Montgomery*, 294 F.3d at 499(citing *Tabron*, 6 F.3d at 155-57). They are discussed below.

### 1. Plaintiff's ability to present his case

Plaintiff's ability to present his own case is "[p]erhaps the most significant of *Tabron*'s post-threshold factors . . . ." *Id.* at 501. In determining Plaintiff's ability, the Court must consider his "education, literacy, prior work experience, and prior litigation experience," as well as his "ability to understand English. *Tabron*, 6 F.3d at 156. Plaintiff claims "only a grade school education and no legal education." Document No. 4 ¶ 12. In addition, if as here Plaintiff is a prisoner, the court must consider "the restraints placed upon him . . . by confinement," including lack of access to a "typewriter, photocopying machine, telephone, or computer." *Id.* (citing *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992)). The Third Circuit places special emphasis on a *pro se* plaintiff's ability to negotiate what it terms "the complex discovery rules," and a plaintiff's demonstrated lack of ability in this area is sufficient ground for a finding that he is not able to present his own case. *Montgomery*, 294 F.3d at 501-02 (citing *Parham*, 126 F.3d at 459).

### 2. Difficulty of the legal issues

Analysis of the complexity of the legal issues involved is not as straightforward as it might seem at first blush. Even where "the ultimate [legal] issue appears relatively simple . . . [s]implicity in the allegation supporting the claim does not translate into simplicity in the presentation of the claim." *Montgomery*, 294 F.3d at 502 (quoting *Parham*, 126 F.3d at 459). Moreover, "the difficulty of the legal

6

issues must be considered 'in conjunction with . . . the plaintiff's capacity to present his own case.'" *Id.* (quoting *Tabron*, 6 F.3d at 157). Plaintiff has, at least by the liberal pleadings standards applied to *pro se* complaints, effectively alleged Defendants' deliberate indifference to his serious medical needs. *See Erickson v. Pardus*, – U.S. –, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081, 1086 (2007)(citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); Document No. 3 pp. 6-7 ¶¶ 24-26. The Third Circuit has held in deliberate indifference cases[4] that while the "ultimate issue appears relatively simple," its presentation is in fact too complex for a relatively uneducated *pro se* plaintiff. *Montgomery*, 292 F.3d at 502-03; *Parham*, 126 F.3d at 459-60.

## 3. The degree to which factual investigation will be necessary and Plaintiff's ability to pursue such investigation

The Third Circuit, as noted above, has held that "'it may be difficult for indigent plaintiffs to understand the complex discovery rules' in investigating their claims."[5] *Montgomery*, 294 F.3d at 503 (citing *Parham*, 126 F.3d at 460). Moreover, incarceration inevitably limits a prisoner's ability to conduct discovery. *Id.* In assessing the third *Tabron* factor, the Court must consider whether there is a "clear need for factual investigation beyond that which [Plaintiff can] conduct from his prison cell." *Id.* Even where the court initially denies a plaintiff's motion, it should reconsider its denial if it becomes clear that the plaintiff cannot in fact effectively negotiate the discovery process.

---

[4] Both of the cited cases involve Eighth Amendment claims of deliberate indifference by prison medical personnel. *Montgomery*, 294 F.3d at 502-03; *Parham*, 126 F.3d at 459-60. However, allegations such as Plaintiff's of state agents' pretrial deliberate indifference, although based on the Due Process Clause of the Fourteenth Amendment, are analyzed in identical fashion. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)(citations omitted); *Walmsley v. City of Philadelphia*, 872 F.2d 546, 551-53 (3d Cir. 1989)(citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))

[5] It may be inferred from the Third Circuit's analysis that all discovery rules are complex for purposes of this discussion. *See Montgomery*, 294 F.3d at 501-04; *Parham*, 126 F.3d at 459-60; *Tabron*, 6 F.3d at 156.

7

## 4. Plaintiff's capacity to retain counsel on his own behalf

That Plaintiff qualifies for *in forma pauperis* status indicates that he has no resources of his own with which to retain counsel.

## 5. The extent to which a case is likely to turn on credibility determinations

Since "it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross examination," it may be appropriate to appoint counsel "when a case is likely to turn on credibility determinations." *Tabron*, 6 F.3d at 156 (citing *Maclin v. Freake*, 650 F.2d 885, 888 (7th Cir, 1981)). However, as "it is difficult to imagine a case that does not" turn on credibility, the court should be cognizant of the degree to which credibility is at issue and, indeed, the Third Circuit has required a determination of "whether the case [will be] *solely* a swearing contest." *Montgomery*, 294 F.3d at 505 (quoting *Parham*, 126 F.3d at 460).

Plaintiff has alleged, again by the liberal pleading standards applied to those acting *pro se*, Defendants' use of excessive force during his arrest, a violation of his rights against unreasonable seizure under the Fourth Amendment as incorporated by the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, 454 (1989); *Elkins v. United States*, 364 U.S. 206, 213-14, 80 S.Ct. 1437, 1442, 4 L.Ed.2d 1669, 1675-76; Document No. 3 pp. 5-6 ¶¶ 11-20. The question presented by Plaintiff's claim is whether Defendants' use of force in effecting Plaintiff's arrest was "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456. Factors to be considered in assessing the reasonableness of Defendants' actions include the seriousness of the crime at issue, whether the suspect presents an "immediate threat to the safety of the officers or others," whether the suspect is "actively . . . resisting arrest or attempting to

evade arrest by flight," the possibility that the suspect is "violent or dangerous," the possibility that he is armed, whether the police action occurs during an arrest, "and the number of persons with whom the police officers must contend at one time." *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004)(citing *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872; *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

As set forth by Plaintiff, this claim will turn on whether Defendants assaulted Plaintiff or Plaintiff assaulted Defendants. *See* Document No. 4 ¶ 7. Its resolution may well depend on nothing more than whom the finder of fact believes. The development of such a swearing contest would support the appointment of counsel.

## 6. Whether the case will require testimony from expert witnesses

For his claim of Defendants' deliberate indifference to his serious medical needs, Plaintiff must first make "an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of [Defendants'] denial was sufficiently serious." *Montgomery*, 294 F.3d at 499 (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). If this seriousness is "not apparent to a lay person,"[6] expert testimony is required. *Id.* at 504 (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 473-74 (3d Cir. 1987)). Plaintiff also suggests that his excessive force claim will require "expert testimony on the Training and Use of chemical pepper spray." Document No. 4 ¶ 10.

It is too early in the lawsuit to determine whether expert testimony will be necessary. Plaintiff's medical claims may be sufficiently obvious to the layperson, and there may be enough evidence for him to either win or lose his excessive force claim without even reaching the issue of the appropriate use of pepper spray. If, however, expert testimony is necessary, the Third Circuit holds that while "it still

---

[6] "[B]roken legs or bullet wounds" are, for example, considered apparent; "[h]eart disease and HIV" are not. *Montgomery*, 294 F.3d at 460.

9

may be difficult for appointed counsel to obtain and afford an expert . . . appointed counsel will have a much better opportunity to obtain an expert than would an indigent prisoner." *Montogmery*, 294 F.3d at 505 (quoting *Parham*, 126 F.3d at 460). In addition, the presentation of expert testimony presents further barriers to the untutored litigant, thus further impeding his ability to present his own case.

## CONCLUSION

The Court cannot determine on the record before it whether Plaintiff's claims have even the slimmest chance of success. As such, it would be an abuse of discretion to grant Plaintiff's motion for appointment of counsel at this time, and the ruling of the magistrate judge is therefore affirmed.. Appointment of counsel under 28 U.S.C. § 1915(e)(1) may, however "be made at any point in the litigation," and this appointment may be made by the court *sua sponte*. *Tabron*, 6 F.3d at 156 (citing *Castillo v. Cook County Mail Room Dept.*, 990 F.2d 304 (7th Cir. 1993)). The magistrate judge should remain cognizant of the *Tabron* factors and revisit Plaintiff's motion should circumstances warrant since, "where a plaintiff's case appears to have merit and most of the [*Tabron*] factors have been met, courts should make every attempt to obtain counsel." *Parham*, 126 F.3d at 461 (citing *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 310, 109 S.Ct. 1814, 1822-23, 104 L.Ed.2d 318 (1989)).

The Third Circuit has set the lower courts in its jurisdiction a challenging task, first warning that *pro bono* counsel is a precious commodity and therefore not to request it indiscriminately, and then imposing a regime where any lawsuit with more than an extremely slim chance of success on the merits that requires more than the most basic discovery, and especially one that requires expert testimony, seems to compel at least an attempt to appoint counsel. This apparent contradiction makes it imperative that any decision regarding appointment of counsel be firmly grounded in *Tabron*, and include findings of sufficient particularity to demonstrate the proper exercise of judicial discretion.

10

## ORDER

**AND NOW**, this 7th day of January, 2008, the Court having considered Plaintiff's appeal of Magistrate Judge Francis X. Caiazza's order denying Plaintiff's Motion for Appointment of Counsel, (Document No. 7), it is **HEREBY ORDERED** that the order is **AFFIRMED**.

BY THE COURT:

*Kim R. Gibson*

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**